Filed 4/18/25  P. v. Erving CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B331940 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A520896) |
| v. | |
| ALBERT ERVING, JR., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jacqueline Lewis, Judge.  Affirmed, and remanded with directions.

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Nicholas J. Webster and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Albert Erving, Jr. (defendant) appeals the trial court's order denying his petitions for resentencing under Penal Code[1] section 1172.6.[2]  He contends the trial court engaged in impermissible judicial factfinding by relying on the preliminary hearing transcript to deny the petition at the prima facie stage. In light of the recent decision by the California Supreme Court in *People v. Patton* (2025) 17 Cal.5th 549 (*Patton*), the trial court did not err in summarily denying his petition, but we remand to give defendant the opportunity to amend his petition with specific facts.

## FACTS AND PROCEDURAL BACKGROUND

### I.     Facts[3]

#### A.  *The underlying crimes*

On the evening of June 30, 1976, Lillian Pixley (Pixley) put her elderly sister Grace Ella Parent (Parent) to bed.  All of the

---

1     All further statutory references are to the Penal Code unless otherwise indicated.

2     Effective June 30, 2022, section 1170.95 was renumbered section 1172.6, with no change in text (Stats. 2022, ch. 58, § 10). We therefore refer to the law formerly codified at section 1170.95 as section 1172.6.

3     We summarize these facts from the transcripts of the preliminary hearing conducted on August 24 and 25, 1976.

lights were turned off and the drapes were closed. At approximately 4:30 a.m. the following morning, a newspaper delivery person saw that the drapes were open, a light was on in Parent's apartment, and a porch light that was usually on was off. When Pixley awoke and checked on her sister the next morning, Parent had a two-and-a-half inch slit on the left side of her neck and several stab wounds to the abdomen and liver. She had been sexually assaulted and strangled to death.

Later that same morning, Pixley's neighbor—Ralph Webb (Webb)—awoke to find a hole in his back screen door. A wallet containing cash and credit cards, and a set of keys along with a scorpion pendant key chain were missing from his home.

### B. *Defendant's parole and arrest*

Defendant, who was paroled on June 22, 1976, called his parole officer in the early hours of July 1, 1976, and arranged to meet the following day. Defendant sounded "slightly excited" and at times almost incoherent. Defendant failed to show up on July 2, and couldn't be located at his provided addresses. On July 4, the parole officer took defendant into custody for failing to keep the parole officer apprised of his whereabouts. Defendant agreed to a search of his person and property, which revealed a scorpion pendant key chain—later determined to be from the Webb residence.

### C. *Defendant's confession*[4]

At the police station, a detective from the homicide bureau interviewed defendant, informing him that the scorpion pendant key chain was identified by its owner and that the police had

---

[4] About 24 hours after defendant confessed, the detective dictated the statement to a secretary, who typed the statement into a report. The confession was not recorded.

retrieved a palm print from the murder scene. After being advised of his constitutional rights, defendant stated, "I committed the crime."

Defendant related the following. Around 1:00 a.m. on July 1, he walked to a housing tract, climbed over a wall, opened a fence and walked into a patio area. He entered the residence through a back door and entered a bedroom where a woman was sleeping on a bed. Defendant removed his clothes, jumped on the woman, grabbed her by the throat and started strangling her until the woman started to froth at the mouth, and her movements became less erratic. Defendant had vaginal and anal intercourse with the woman, then went to the kitchen and retrieved a butcher knife. He stabbed the woman several times and cut her throat; when he was certain she was dead he had vaginal and anal intercourse with her again. Defendant cleaned the blood from his body and replaced the knife in the kitchen, then put his clothes back on, wiped surfaces to remove his fingerprints, took the victim's red wallet, wristwatch, and a paring knife, and exited the residence. He buried the knife, threw away the wallet and wristwatch, and returned to his mother's house at daylight.

Defendant agreed to retrace his steps and show the detectives where he discarded the stolen items. He led them to the areas where they recovered the knife and wristwatch (but not the red wallet) and pointed out the house where he assaulted and murdered Parent.

On returning to the police station, defendant informed the officers that he had more details to reveal. Defendant said he was not sexually satisfied after he raped and murdered Parent and went to apartments nearby to find "another lady." He

4

entered one residence by punching a hole in the screen door; inside, he found a man and a woman sleeping. After deliberating, he decided he could not overpower the man and rape the woman without getting caught, so he took a wallet and a set of keys on a key chain, before exiting the house. He attempted to enter another residence but it was locked and he left the area. Defendant again accompanied the police officers to the crime scenes to verify his story.

Defendant pointed out both the Webb residence, and the third residence that was locked. Defendant remembered he had discarded the red wallet in some bushes, and the officers recovered it. He also led the police to the spot where he had secreted the set of keys taken from the Webb residence.

### D.  *Charging, plea, conviction and appeal*

On August 27, 1976, the People charged defendant with first degree murder (§ 187), rape (former § 261.2, now § 261, subdivision (a)(2)), sodomy (§ 286), and two counts of burglary (§ 459). The People further alleged that the murder was committed during the commission and attempted commission of a burglary and rape. The People additionally alleged that defendant had suffered five prior convictions.

On December 21, 1976, defendant pled guilty to first degree murder.[5] The trial court struck the prior convictions and remaining counts.

The trial court sentenced defendant to life in state prison. The judgment was affirmed on direct appeal. (*People v. Erving* (Aug. 12, 1977, No. 30077) [nonpub. opn.] (*Erving*).)

---

[5]    The appellate record does not contain a transcript of the plea hearing and the record fails to show if defendant admitted the truth of any factual basis at the time he entered his plea.

## II. Procedural Background

On October 17, 2022 and on April 10, 2023, defendant filed form petitions for resentencing of his murder conviction, alleging in a conclusory fashion that he "could not presently be convicted of murder . . . because of changes made to [P]enal Code §§ 188 and 189."[6]

On April 20, 2023, the People filed a response contending defendant was ineligible for resentencing because he was prosecuted as the sole and actual perpetrator. With the response, the People attached as exhibits a copy of this court's opinion in *Erving*, *supra*, No. 30077, as well as transcripts of the preliminary hearing and the original sentencing hearing.

On April 26, 2023, defendant filed a reply brief arguing the court could not consider the preliminary hearing transcript because he did not stipulate to any factual basis for his plea.

On June 15, 2023, the trial court denied both petitions. The court denied the October 2022 petition as (1) duplicative of a previously denied petition, and (2) without merit because the preliminary hearing transcript supported a finding that defendant was the actual killer and thus not entitled to relief under section 1172.6. The court also denied the petition filed on April 10, 2023, as duplicative of the October 2022 petition.

Defendant timely filed this appeal.

## DISCUSSION

Defendant argues that the trial court erred in summarily denying him relief under section 1172.6.

---

[6] Defendant had previously filed a petition with the same allegations, which the trial court denied because defendant was the "actual killer."

In 2018, our Legislature amended the definition of "murder" in our State to preclude a jury from "imput[ing]" the "[m]alice" element of that crime "based solely on [a defendant's] participation in a crime." (§ 188, subd. (a)(3).) Our Legislature's purpose was to ensure that "[a] person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).) As amended, liability for murder is limited to persons (1) who are the actual killer; (2) who aided and abetted the actual killer in the murder (that is, who acted with the intent to kill); or (3) who were a major participant in the underlying felony that resulted in the killing, but only if they also acted with reckless indifference to human life. (§§ 188, subd. (a)(3), 189, subd. (e).)

Section 1172.6 is the procedural vehicle by which persons convicted of murder in a now-final judgment can seek to vacate convictions that do not satisfy the currently permissible theories for homicide liability. (§ 1172.6, subd. (a).) Summary denial of a so-called section 1172.6 petition is appropriate only if the defendant petitioning for relief fails (1) to file a facially valid petition, or (2) to make a "prima facie case for relief" under the statute. (*Id.*, subds. (b) & (c); *Patton*, *supra*, 17 Cal.5th at pp. 558-559, 562.) A defendant files a facially valid petition as long as he "recit[es]" "section 1172.6's requirements." (*Id.* at p. 562.) A prima facie case for relief entails a "more demanding" "inquiry." (*Id.* at p. 566.) To evaluate whether a petition establishes a prima face case, a court must take the petition's factual allegations as true and ask ""whether the petitioner would be entitled to relief if [those] allegations were proved.""" (*People v. Lewis* (2021) 11 Cal.5th 952, 971.) "'However, if the record, including the court's own documents [from the record of

7

conviction], "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner"" and summarily denying the petition. (*Ibid.*) Where a petition makes only "conclusory allegations" (including those made by "checkbox"), the record of conviction controls and summary denial is appropriate. (*Patton*, at pp. 564-565.) But where a petition "points to specific facts" indicating that the defendant was convicted on a now-invalid theory, there is a "material fact dispute" necessitating an evidentiary hearing and precluding summary denial. (*Id.* at p. 567.) Thus, where, as here, the record of conviction establishes that defendant was the actual killer, a defendant seeking to avoid summary denial must allege "specific facts that identify someone else as the direct perpetrator" (rather than merely allude to a "hypothetical alternate direct perpetrator"). (*Ibid.*)

The trial court did not err in summarily denying defendant's identical section 1172.6 petitions in this case. Here, the evidence presented at the preliminary hearing indicates that defendant was the actual killer of Parent. A court examining whether a defendant who has entered a plea has made a prima facie case may look to the preliminary hearing, even if the defendant did not adopt the preliminary hearing transcript as a factual basis for the plea. (*Patton*, *supra*, 17 Cal.5th at p. 569 & fn. 12.) Because the allegations in defendant's petitions are conclusory and do not point to "specific facts that identify someone else as the direct perpetrator," the record of conviction makes clear that defendant was the actual killer and that his petitions may be summarily denied. (*Id.* at p. 567; *People v. Delgadillo* (2022) 14 Cal.5th 216, 233.)

8

However, because *Patton* was the first decision to draw the distinction between conclusory and factual allegations and because defendant has so requested, we will remand the matter to the trial court to give defendant the opportunity to amend his petition to allege "specific facts" "identify[ing] someone else as the direct perpetrator."

## DISPOSITION

The order of June 15, 2023, denying defendant's section 1172.6 petition is affirmed, but we remand this matter to the superior court with directions to consider an amended petition should defendant, within 30 days of the issuance of the remittitur, seek to file one.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, P.J.
HOFFSTADT


We concur:


_____, J.
BAKER


_____, J.
MOOR

9